Dec. 1813.  CARRERE vs. THE UNION INSURANCE COMPANY of MD.

Carrere
vs
Insurance Comp'y

The warranty in a policy of insurance that the property is the insureds, is falsified by his having concealed papers on board of the vessel at the time of her capture—having practised artifice to prevent their detection, and by the use of fictitious names, for the purpose of such protection.

If there has not been a total loss, can the insured recover for a partial loss, without having abandoned?

APPEAL from *Baltimore* County Court.  Covenant on a policy of insurance.  The defendants, (now appellees,) pleaded *non infregit conventionem*, and issue was joined. The plaintiff, (the appellant,) at the trial, read in evidence a policy of insurance, executed to him by the defendants, under their common seal, on the 5th of June 1806, in the usual form, from *Baltimore* to *Bourdeaux*, upon all kinds of lawful goods and merchandize, laden or to be laden, on board the schooner *Venus*, at the rate of 4 pr. ct. to the amount of $20,000, warranted to be *American* property, proof of which, in case of need, to be required in the *United States* only.  He also gave in evidence, that on the 28th of June 1806, he shipped on board the *Venus*, at the port of *Baltimore*, certain goods and merchandizes then belonging to him, viz. 44 hogsheads of clayed sugar, 41 hogsheads brown sugar, 23 barrels of clayed sugar, 101 bags *Carracas* cocoa, and 308 bags of cotton, which were accompanied by a manifest, bills of lading, and proof of property, in due and regular form.  That at the time of making of the policy and shipment, the plaintiff was a citizen of the *U. S.* residing in *Baltimore*.  That the schooner *Venus* did regularly clear out on her said voyage from *Baltimore* to *Bourdeaux*, on the 2d of July 1806, and sailed on the 7th, with the above mentioned goods, papers and documents, on board, and in the regular prosecution of her said voyage she was, on the 24th of July 1806, captured on the high seas by a *British* sloop of war, and carried into *Halifax* in *Nova Scotia*, where the goods were libelled as prize, and condemned as such on the 9th of September 1806, in the vice admiralty court there, and thereby totally lost to the plaintiff.  The defendants then gave in evidence, that on the 28th of June 1806, the plaintiff took and subscribed in *Baltimore*, and put on board the said schooner, an affidavit to prove his property in the said goods; and also on the 4th of July, in the said year, wrote the following letter, under the signature of *Maniele*, in the *French* language, addressed to his correspondents in *Bourdeaux*, by the name of *Duhally*, (which was not their real names.)  "The purpose of this letter is to acknowledge the receipt of yours dated 25th of April, which I have not time to answer by this opportunity, but

shall do so very speedily." And also, on the same day, wrote in the *French* language, in sympathetic ink, upon the paper containing the above letter, another letter addressed to *John Ducorneau*, a citizen of the *French* government, his correspondent in *Bourdeaux*, by his real name, to whom the said goods were consigned. In this letter, amongst other things it is said, "In the hogshead No. 36, under the tail of the J, you will find in the head the authenticated copy of the discharge, upon security of the shipment to the Isle of *France*, of the Ck. the original was sent you by friend R, with whom you will settle for the 101 bags of cocoa on board the *Venus*, the freight of which, on the back of the bill of lading, is £37 5 1, add to this 5 pr. ct. average damage, and it will give the amount of the freight of that article. The 23 barrels of sugar belong to *James Chaytor*, and the freight is £13 17 10, which you will place to his account, and the remainder of the goods is mine. You will give me credit for the nett produce of these 23 barrels." That the plaintiff put both the said letters on board of the schooner, on the day of their date, to be transmitted therein to *Bourdeaux*. That the said letters, together with the affidavit aforesaid, were found on board the schooner at the time of her capture. That the letter in sympathetic ink was not visible at first, and was not discovered until after the arrival of the schooner in *Halifax*, and after her papers, including that letter, were deposited in the office of the court of vice admiralty, where the letter was discovered and rendered legible by the proctor of the captors, by the application of a chymical mixture to the paper; and that the goods, mentioned in the said letter as the property of R, and of *James Chaytor*, were part of the goods so shipped by the plaintiff, and mentioned in the said affidavit as his own. That the paper mentioned and described in the letter written in sympathetic ink, as being concealed in one of the hogsheads of sugar, was, after the discovery of the said letter, actually found so concealed in the said hogshead, by the officers of the court of vice admiralty, and was exhibited and filed in the said court, and purports to be a discharge given at the principal office of *Bourdeaux*, upon security, of goods dispatched for the ports of the republic, and is signed by the Receiver and the Director of Customs at *Bourdeaux*. the 23d Fructidor, year 12, also by the Director of Customs at the

1813.

Carrere
vs
Insurance Comp'y

Isle of *France*, the 11th Thermidor, year 13, and by the commissary of the commercial relations of *France* with *Baltimore* on the 20th of May 1806. It stated that "the officers set over the police of external commerce will allow to pass for Mr. *J. Ducorneau,* merchant, residing at *Bourdeaux,* the goods hereafter mentioned bound to the Isle of *France,* or other *French* ports, and not elsewhere, unless compelled by force, of which there shall be the evidence of authentic instruments, upon the ship *Chesapeake* of *Baltimore,* Capt. *Lee,* where they were shipped, as appears by permits of books in this office, reported and clothed with the formalities of shipment, viz. 252 tons three hogsheads red wine; 16,870 gallons red wine in 670 boxes," &c. "The above mentioned vessel is *French,* neutralized at *Bourdeaux* the 9th Fructidor, instant, which goods have paid no duties, considering their destination, for which Mr. *J. Ducorneau* has bound himself with Mr. *Constantin,* to make them be carried to the Isle of *France,* or other *French* ports, in the space of 18 months, and to bring back, on the outside of the present certificate, one from the officers of customs or constituted authorities of the place, &c. The defendants also read in evidence a copy of the record of the proceedings in the vice admiralty court at *Halifax,* condemning the whole of the goods on board of the *Venus* at the time of capture, excepting the private adventure of the master, as lawful prize, &c. The plaintiff then gave in evidence, that the papers, so found concealed in a cask of sugar, did not in any manner relate to the schooner *Venus,* or her cargo, or to any part thereof, but to a former shipment of goods made by the said *Ducorneau,* to whom the letter in sympathetic ink was addressed, to the Isle of *France,* and that the 101 bags of cocoa, mentioned in the said letter, was originally the property of *Caze* and *Richaud,* merchants of *New York,* who are the persons meant and intended in the said letter by the name of R, and had been before the 1st of June 1806, received for them by the plaintiff, and were by them directed to be sold for their account, by their letter to him of the 7th of June 1806, which letter he read in evidence. This last letter was received by the plaintiff on the 9th of the same month, and not being able to sell the cocoa on advantageous terms, he resolved to take the same on purchase on his own account at a certain price, and to ship the same as his own pro-

party in the *Venus*. That on the 29th of June 1806, he informed *Caze* and *Richaud* of this determination, and of the shipment, by letter of that date, which he gave in evidence, and which letter was received by them on the 2d of July, who dissented immediately from the said purchase, and expressed such their dissent by letter of that date, and which he also gave in evidence. That the said letter was received by the plaintiff on the 4th of July, before the writing of the letter in sympathetic ink; and that in consequence of the receipt of the letter from *Caze* and *Richaud*, and of their dissent therein expressed, the plaintiff relinquished his claim to the 101 bags of cocoa under the said purchase, and did, in and by the letter in sympathetic ink, direct the cocoa to be considered by his correspondent aforesaid as the property of R, meaning *Caze* and *Richaud*. That *Caze* and *Richaud* were natives of *France*, but before the year 1806 were duly naturalized as citizens of the *U. S.* and did then reside in *New-York*. That the 23 barrels of sugar, mentioned in the letter in sympathetic ink, were, before the 5th of June 1806, the property of *James Chaytor*, and were before that day sold by him to the plaintiff, who shipped them as aforesaid, they then being his property; and on the 2d of July, and before the writing of the said letter, *Chaytor*, who is a native citizen of the *U. S.* then residing therein, requested the plaintiff to rescind the said sale, and permit the 23 barrels of sugar to go to *Bourdeax* in the *Venus* as the property of him, *Chaytor*, and so to mention it to the plaintiff's correspondent; to which the plaintiff consented, through a wish to oblige *Chaytor*, and in consequence thereof, in the letter in sympathetic ink, informed his correspondent, that the 23 barrels of sugar belonged to *James Chaytor*. The plaintiff further gave in evidence, that a claim was put in for the said goods in the vice admiralty court in his behalf, and duly prosecuted, and that after the condemnation, an appeal on his part was duly made, of which appeal, still depending, the defendants had due notice. The defendants then prayed the court to direct the jury, that if they believed the foregoing evidence, the plaintiff was not entitled to recover. This direction the Court, [*Nicholson*, Ch. J.] gave to the jury. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. and BUCH-ANAN, and JOHNSON, J.

*W. Dorsey* and *Harper*, for the Appellant, contended, 1. That the warranty was not falsified by the concealed papers. They cited *Rich vs. Parker*, 7 *T. R.* 705. 1 *Marsh.* 409, 475, 476. 2 *Postlew. Dic.* tit. *Silesian Loan*, 716. *Park*, 229; and *Livingston vs. The Maryland Insurance Company*, 6 *Cranch*, 274.

2. That if the risk was increased by those papers, yet that was a fact for the jury to decide; and to vitiate the policy, it must be shown that there were circumstances which increased the risk. *Livingston vs. The Maryland Insurance Company*, 6 *Cranch*, 274.

3. That the insured need not abandon where there was not a total loss, but may recover for a partial loss. They cited *Gardiner vs. Croasdale*, 2 *Burr* 906. *Goss vs. Withers*, Ibid 697. *Watson vs. The Insurance Company of North America*, 1 *Binney*, 47, 53; and *Marsh.* 511, 512, 599.

*Martin, Pinkney* (Attorney General, *U. S.*) and *Purviance*, for the Appellees, contended, that the least variation so as to create a risk, would defeat the insurance, and annul the contract. That the property must not only be *American*, but must have all papers to prove it such, and free from those that might be calculated to call it in question. They cited *Marsh.* 406, 407, 408, 409, 411, 398, 183, 203, 281, 473. *Park*, 242 to 252, 264, 265, 272, 273, 387, 388, 408. *Middlewood vs. Blakes*, 7 *T. R.* 163. 1 *Rob.* 111. *Blagge vs. The New York Insurance Company*, 1 *Caine's Rep.* 549. *Vandenheuvel vs. The United Insurance Company*, 2 *Caine's Cases*, 217, 222. *Crousillat vs. Ball*, 4 *Dall. Rep.* 295. *The Chesapsake Insurance Company vs. Stark*, 6 *Cranch*, 268, 270, 273. *The Maryland Insurance Company vs. Le Roy*, 7 *Cranch.* 26. *Chitty's L. N.* 314, 315. *Lee on Captures*, 130. *Vattell*, 339. *Goix vs. Low*, 1 *Johns. Ca.* 346. *Pollard vs. Ball*, 8 *T. R.* 444. *Livingston vs. The Maryland Insurance Company*, 6 *Cranch.* 279. 1 *Rob.* 104, 106, 159; and 2 *Rob.* 13, 294, 295, 133, 134, 89, 91.

CHASE, Ch. J. delivered the opinion of the court. The most important question in this case is, whether the war-

ranty has been fulfilled? In my opinion the concealed papers, the artifice practised to prevent detection of them, the fictitious names used, and the mystery in which the whole are enveloped, contradict and discredit the legal documents, (the bill of lading, manifest and affidavit, of the appellant *John Carrere,*) which cover the whole property insured as his property. These circumstances are inconsistent with good faith, that purity of intention and fair dealing, which should be the concomi'ants of every policy of insurance, and contaminate the whole transaction by indicating a fraudulent design of covering property not the property of the appellant, and justly exciting suspicion that the property belonged to the enemy of the belligerent making the capture. The documents being falsified in part were deprived of all credit, and the warranty was not complied with.

Although the concealed papers were not known at the time of the capture, yet being on board of the vessel, and discovered at the time of the trial in the court of admiralty, they were a justifiable cause of capture and detention, and from their suspicious aspect, precluding further proof and explanation, violated the warranty.

JUDGMENT AFFIRMED.